## 47171. WINSTON CORPORATION v. PARK ELECTRIC COMPANY.

CLARK, Judge. Park Electric Company filed suit on November 5, 1970, against Winston Corporation for a debt covering labor and material furnished as an electrical contractor in the completion of a nursing home construction project.

An answer was filed denying any obligation together with a counterclaim alleging a breach of the "contractual obligation and duty to the defendant to perform the electrical

and related work incident to the construction of said nursing home." After discovery proceedings, including interrogatories from both parties and cross examination of Joseph Herman Park, Winston amended its answer on October 19, 1971, to aver that the plaintiff was a foreign corporation which had transacted business in Georgia without first having procured a qualification certificate required by *Code Ann.* § 22-1401 and therefore had failed to perform a condition precedent to the bringing of this suit.

This amendment added other defenses including inter alia a specification that Winston had pursuant to the provisions of *Code Ann.* § 22-1421 (c) "voided, avoided and disaffirmed, and does hereby void, avoid and disaffirm any and all contracts which it may have or may have had with plaintiff directly or indirectly relating to the construction of a facility known as King's Inn Nursing Home located at 54 Peachtree Park Drive, Atlanta, Georgia."

Thereafter Winston filed its motion for summary judgment on the basis of the foregoing recited two defenses in the amendment. The pertinent facts developed from the discovery proceedings including interrogatories, request for admission, depositions and affidavits are hereafter stated.

This motion for summary judgment was denied. A certificate for immediate review brings this case to this court.

The salient facts establish that prior to April 1969, Park, a resident of Cleveland, Tennessee, had conducted an electrical contracting business as a sole proprietorship. Resulting from a subcontract with Diversified Engineering & Sales Corporation on a Tennessee shopping center, he next made another subcontract with Diversified. This was in 1968 and provided for him to do the electrical work for the King's Inn Nursing Home in Atlanta which was to be constructed by Diversified for Winston. Upon default by Diversified, Winston as owner found it necessary for completion of the construction to assume the contract and function of its general contractor. Comparatively little electical work had been completed to that date under

the 1968 subcontract although Park had material and equipment on the site. This take-over was in April 1969 with Park testifying he had thereafter as an individual proprietorship completed the original 1968 subcontract.

Park Electric Company, plaintiff in this action, had been organized as a Tennessee corporation on March 7, 1969, with its charter authorizing it to conduct the same type of business as had been done by Park as an individual proprietorship. Subsequently a change order increasing the size of certain equipment and an agreement by letter concerning overtime labor was made between Winston and the Tennessee corporation. Although the record includes an affidavit by Winston's vice president as to the number of plaintiff's employees, the extensive amount of electrical work done by the plaintiff corporation, and that plaintiff corporation transacted business at the nursing home site more or less continuously for a period of six months beginning in April 1969, it is obvious that much of this referred to the work done by Park individually rather than to his corporation. This is supported by the counter-affidavit of Herman Park as president of the plaintiff corporation that "the plaintiff's only transaction was to complete and perform additional services on a contract previously entered into by affiant while operating as a proprietorship prior to the incorporation of the plaintiff company." It should also be noted that the dispute between the parties is with reference to the correct amount of overtime which was an item of the supplemental agreement between Winston and the corporation, the defendant pointing out plaintiff's employees allegedly worked in excess of seven thousand (7,000) overtime hours."

After Winston's amendment of October 19, 1971, wherein had been raised the defense of plaintiff being an unqualified foreign corporation doing business in Georgia, the Tennessee corporation was qualified in Georgia on October 27, 1971. The belated qualification application recites "Park Electric Company is not presently doing business in the State of Georgia and does not at this time intend

to do business in the State of Georgia hereafter; however, the corporation did do business in the State of Georgia in 1969 and this filing is to qualify for past business transacted." Winston contends this belated qualification to be ineffective because *Code Ann.* § 22-1421 (b) expressly provides that "no foreign corporation that under this Code is required to obtain a certificate of authority shall be premitted to maintain any action, suit or proceeding in any court of this State unless before commencement of the action it shall have obtained such a certificate." Appellant points out that the original statute promulgated in 1968 to be effective April 1, 1969, contained the words "before or after commencement" but that the words "or after" were eliminated by amendment of our Corporation Code in Ga. L. 1969, p. 152, § 76.

In addition to the statement contained in the application for certificate of authority to transact business in Georgia which has heretofore been quoted there is other evidence in the record showing that the Tennessee corporation "has never transacted business in Georgia other than the one contractual transaction between plaintiff and defendant for the work as an electrical subcontractor in the construction of the King's Inn Nursing Home, Atlanta, Georgia, during the calendar year 1969," (R. 72) and never intended to do any other work in Georgia.

The basic question for determination by this court is whether under Ch. 22-14 of the Annotated Code the Tennessee corporation was required under these facts to qualify to do business in Georgia prior to commencement of its suit. *Held:*

"Whether a foreign corporation is doing business in the sense required for any particular purpose is a question dependent primarily upon the facts and circumstances of each particular case, considered in the light of the purposes and language of the pertinent statute or statutes involved." 36 AmJur2d 312, Foreign Corporations, § 317. Having already recited in detail the facts and circumstances, we now consider the pertinent statutes.

In 1968 the General Assembly enacted a new statute effective April 1, 1969, which repealed Corporations, Title 22 of the Georgia Code in toto and replaced it with a new Title 22 representing a modernization of our State law on this subject. The history of this legislation is in the article by Professor Pasco M. Bowman, II, in 4 Ga. State Bar Journal 419 et seq. At p. 423, Prof. Bowman reports that "The Model Business Corporation Act was used as a guide in the work of the draftsmen. . ." but ". . . in most instances, the Model Act language has been modified or supplemented to take advantage of useful ideas derived from sources outside the Model Act."

The portion of our Corporation Code with which we are involved is § 22-1401 (b) (11) which provides that a foreign corporation shall not be considered to be transacting business in this state and therefore is relieved of qualifying where it is "Conducting an isolated transaction not in the course of a number of repeated transactions of like nature." This was derived from subparagraph (j) of § 99 of the 1966 version of the Model Act, which read "(j) Conducting an isolated transaction, *completed within a period of 30 days and* not in the course of a number of repeated transactions of like nature." (Emphasis supplied.) The omission of the words "completed within a period of 30 days and" by the draftsmen of our statute is obviously significant as to the intentions of the lawmakers.

"In most jurisdictions it has been held that single or isolated transactions do not constitute doing business within the meaning of such statutes, although they are a part of the very business for which the corporation is organized to transact, if the action of the corporation in engaging therein indicated no purpose of continuity of conduct in that respect." 20 CJS 48, Corporations, § 1830. It is of interest to note that CJS contains citations from 21 states as having adopted this principle. In addition thereto CJS cites a number of New York decisions under the caption of "Continuity of action requisite" with the following supportive language "Doing business in the

State implies continuity of corporate activity evidenced by circumstances attesting an intent to conduct a continuous business and not one of temporary character."

What is the meaning of the word "isolated" as used in our Georgia statute? "When I use a word it means just what I choose it to mean: neither more nor less" said Humpty Dumpty to Alice in Louis Carroll's enchanting classic "Through the Looking Glass." Humpty Dumpty's etymological directive does not apply in construing statutes where words have a specific meaning derived from dictionaries and decided cases. Paragraph 1 of *Code Ann.* § 102-102 directs that "The ordinary significance shall be applied to all words . . ." To apply this rule we turn to Webster's 3rd New International Dictionary (1961) where we find the word "isolated" to mean "occurring alone or once." From 22A Words & Phrases, Perm. Ed., 522, we note "isolated" is the antonym of "repeated" or "successive," citing Gales v. Weldon (Mo.), 282 S. W. 2d 522, and Commonwealth v. Summons, 157 Pa. Super. 95 (41 A2d 697).

Applying the CJS principle to the facts and circumstances of this particular case in the light of our statute, we find that where an individual was in Georgia completing a subcontract as a sole proprietor and after incorporation of his business completed the performance of the contract as an individual and in connection therewith undertook additional work in the name of his foreign corporation without any intention of doing any further business in Georgia other than the "isolated transaction," that the foreign corporation was relieved by the terms of subparagraph 11 of *Code Ann.* § 22-1401 (b) of qualifying in Georgia before commencement of this suit.

Because this is the first time this issue of law has been brought to the Georgia appellate courts, able counsel[1] for

---

[1] "Lawyers often pound the table,
Query courts in accents terse,
Why they label counsel able,
When the judgments are adverse?"    —Morgan Thomas

appellant has asked this court to provide guidance as to interpretation of the words "isolated transaction" as applied to construction contracts. A counsellor would have no difficulty in advising his client that the South Carolina corporation which crosses the Savannah River to construct an outhouse obviously would not have to qualify whereas the building corporation which enters Georgia to build a multi-story office or apartment building would have to qualify despite its contract being a single transaction.

When, however, a court seeks to establish an ironclad "doing business" rule it is faced with the situation pointed out by Judge Sidney O. Smith, Jr., of the U. S. District Court for the Northern District of Georgia in Textile Bkg. Co. v. Colonial Chemical Corp., 285 FSupp. 824, 827, namely, that "use of the phrase 'doing business' is used in three distinguishable contexts: (1) jurisdiction over foreign corporations, (2) taxation of foreign corporations, and (3) regulation of foreign corporations (qualification)." The result is that "varying degrees of activity may be necessary to subject the foreign corporation to the state's taxing power, its regulatory power, and its jurisdiction for service of process." 18 ALR2d 188. Considering the complexity of the problem, particularly when one must recognize that the levels of activity vary according to whether the foreign corporation is being taxed or being subjected to service of process or being denied access to a court which may be its sole forum for redress, we submit the pragmatic solution is: the question of "doing business" is to be considered a matter of fact to be resolved on an ad hoc or case-by-case basis and not by application of a mechanical rule. This would be in accord with the following authorities: Wenzel v. Morris Distrib. Co., 439 Pa. 364 (266 A2d 662), Peterson v. U-Haul Co. 409 F2d 1174 (Neb.), Diapulse Corp. v. Birtcher Corp., 362 F2d 736 (N. Y.), Elliott v. Edwards Eng. Co., 257 FSupp. 537, aff. 364 F2d 991 (Colo.), WSAZ, Inc. v. Lyons, 254 F2d 242 (Ky.), Aro Mfg. Co. v. Automobile

Body Research Corp., 352 F2d 400 (Mass.), Green v. Robertshaw-Fulton Controls Co., 204 FSupp. 117 (Ind.), Golino v. Curtis Pub. Co., 248 FSupp. 576 (La.), Brewster v. Boston Herald-Traveler Corp., 141 FSupp. 760 (Me.), Truck Transport Co. v. Canadian National Railways, 168 FSupp. 619 (Mich.), Dodd v. Rahway Valley Co., 150 FSupp. 599 (N. J.), Graybill v. Sims Saddle & Leather Co., 241 FSupp. 432 (S. C.). See also 20 CJS 151, Corporations, § 1920.

We believe that this ad hoc approach is in accord with the intent of our legislature in its eclectic effort to adapt the Model Business Corporation Act to our state.

In summation we submit the meaning of "isolated transaction" in our Corporation Code is to be determined in the same way as the term "doing business." It is largely one of fact to be decided according to the circumstances of each particular case including consideration of the purpose for which the term is being used so that the local activities of the foreign corporation must be judged as a whole while keeping in mind the language of our statute and the legislative intent. Under such test it is the extent of activities by the foreign corporation in Georgia rather than the singleness that is considered, whether it be a construction enterprise or some other business. Where the activities are minimal and unsubstantial in connnection with only one contract and there is displayed no intention to continue these activities after completion of the single contract, the foreign corporation does not have to qualify because its contracts with Georgia relate to an isolated transaction. If such activities are extensive in scope and involve a great deal of work over a period of time, then qualification is required despite all such activities being related to a single contract. The touchstone is reasonableness so that the result does not violate due process nor offend our notions of fair play and should be in the spirit of Exodus 12:49: "One law to him who is home born and unto the stranger who sojourneth among you."

Even though Park Electric Co. had a number of employees in Georgia and did considerable work over a substantial period of time in our state these activities were all in relation to a single contract with no intention to engage in repeated transactions of a like nature. This came within the "isolated transaction" exception of our Corporation Code. Therefore plaintiff was lawfully in court to sue on the single contract as an isolated transaction without prior qualification as a nonresident corporation.

In view of our holding it is not necessary to deal with the other defense contention presented under *Code Ann.* § 22-1421 (c).

*Judgment affirmed. Eberhardt, P. J., and Deen, J., concur.*
ARGUED MAY 8, 1972—DECIDED MAY 24, 1972—
REHEARING DENIED JUNE 16, 1972.

*Hansell, Post, Brandon & Dorsey, H. Boyce Connell, Jr.,* for appellant.

*Howard, Howard & Hall, William V. Hall, Jr., Lynwood A. Maddox,* for appellee.