## 60165. REISMAN v. MARTORI, MEYER, HENDRICKS & VICTOR.

BANKE, Judge.

Appellee sued appellant for fees for legal services. Appellant Reisman is a medical doctor and general surgeon. The appellee is an Arizona professional association comprised of approximately 18 lawyers. In November of 1977, Dr. Reisman contacted Edwin Hendricks, a partner of appellee, seeking legal advice and representation in a dispute between himself and the Floyd County Medical Center (hospital). The hospital had restricted Dr. Reisman's privilege to use its facilities by requiring him to consult with another surgeon before scheduling a patient for surgery and to have another surgeon present during surgery. In addition to vindicating his reputation, Dr. Reisman sought advice as to bringing an action against the doctors who were responsible for having the restrictions imposed.

Hendricks flew to Atlanta and associated local counsel, who was hired with Dr. Reisman's approval and was to be paid for his services directly by Dr. Reisman. A hearing was obtained before the hospital authority resulting in affirmance of the restrictions of Dr. Reisman's privileges. Working through the Christmas holidays, Hendricks obtained an injunction in federal court on due process grounds, ordering the hospital to refrain from enforcing the restrictions. Before the order was entered, however, the hospital authority reinstituted disciplinary proceedings against Dr. Reisman, this time in apparent accordance with due process requirements. In the second proceeding, the hospital's investigating committee recommended that Dr. Reisman's privileges be completely revoked, rather than

restricted. Revocation of privileges requires notification of the State Board of Medical Examiners, and Dr. Reisman feared he could lose his license to practice medicine. Accordingly, he decided after consultation with Hendricks and local counsel that it would be to his advantage to negotiate a dismissal of the administrative proceeding in return for his resignation from the hospital staff.

Hendricks negotiated this compromise and was preparing to pursue an action for damages against the doctors who had instituted the disciplinary proceedings against Dr. Reisman, when Dr. Reisman requested that the case be abandoned and a final bill presented. The total bill for Hendricks' services, including travel costs and professional services of several of Hendricks' associates who also worked on the case, was $21,438.14. Dr. Reisman had made advances of $15,000 but failed and refused to pay the balance. In the subsequent action on the debt, Dr. Reisman contended that appellee's services left him in the same position as if he had not had legal representation at all and that a failure of consideration had thus occurred. A jury awarded appellee the full amount of the unpaid portion of the bill, and Dr. Reisman appeals. *Held:*

1. Dr. Reisman urges that the trial court erred in denying his motion for directed verdict based upon appellee's failure to register as a foreign corporation in accordance with Code Ann. § 22-1421 (b) for the purpose of maintaining this suit. We do not agree. Assuming, without deciding, that the appellee professional association was required under Code Ann. § 22-1421 (a) to procure a certificate of authority from the Secretary of State in order to transact business in Georgia, its activities in this state have not been sufficiently extensive to invoke the statute here. " 'In most jurisdictions it has been held that single or isolated transactions do not constitute doing business within the meaning of such statutes, although they are a part of the very business for [sic] which the corporation is organized to transact, if the action of the corporation in engaging therein indicated no purpose of continuity of conduct in that respect.' [Cit.]" *Winston Corp. v. Park Elec. Co.,* 126 Ga. App. 489, 493 (191 SE2d 340, 90 ALR 3d 929) (1972).

*Winston* held that "the question of 'doing business' is to be considered a matter of fact to be resolved on an ad hoc or case-by-case basis . . . [and] . . . the meaning of 'isolated transaction' in our Corporation Code is to be determined in the same way as the term 'doing business.' " Id. at p. 495-96. *Winston* also makes it clear that the purpose of Code Ann. § 22-1401 is to require registration of foreign corporations which intend to conduct business in Georgia on a continuous basis, not as a temporary matter. Activity related to a single transaction or contract is thus not contemplated.

The evidence here showed that the appellee's activities were concentrated in Arizona, although various attorneys in the firm had handled litigation (or "transacted business") outside the state of incorporation. Hendricks had represented clients in Georgia on two prior occasions, but these had nothing to do with his representation of Dr. Reisman. Under these circumstances, there is ample basis for the court's conclusion that the appellee had neither extended its business into Georgia on a continuous basis nor engaged "in a number of repeated transactions of like nature" within the state. Code Ann. § 22-1401 (b) (11); Cf. *Van Bergen &c., Inc. v. Exec. Equities, Inc.,* 139 Ga. App. 319, 320 (228 SE2d 356) (1976). The trial court correctly held that the appellee's representation of Dr. Reisman amounted to an isolated transaction and therefore properly denied the motion for directed verdict.

2. Since the question of whether appellee was transacting business in Georgia was one of law which was properly decided by the trial court, appellant was not entitled to a jury instruction that a foreign corporation which does not obtain a certificate of authority may not maintain an action in the Georgia courts. In any event, the requested charge was an incomplete statement of the law because it did not explain that a foreign corporation need not obtain a certificate of authority if it was "conducting an isolated transaction not in the course of a number of repeated transactions of like nature." Code Ann. § 22-1401 (b) (11), supra.

3. Nor do we agree with appellant's arguments that appellee failed to lay the proper foundation for admission of computer printouts under the business records exception to the hearsay rule (Code Ann. § 38-711). In order to establish the amount owed to appellee for professional services, computer printouts showing the number of hours of work done on appellant's case were tendered in evidence. Hendricks, as president of the firm, described of his own personal knowledge how the computer printouts were developed and how they were used in determining what appellant owed. Each person who worked on the case completed daily time sheets, which were submitted to an in-house computer operator who entered the information into a computer. The computer compiled the data into total figures for the month, and Hendricks used the printouts to prepare the monthly bills mailed to Dr. Reisman. These were regularly kept business records, prepared and filed under Hendrick's supervision and control, in the ordinary course of appellee's business.

Appellant's contention that the proper foundation was not laid because Hendricks did not actually operate the computer is without merit. It is well established that the personal appearance of all the various clerical personnel who made the entries or fed the

information into the computer is not required. See e.g., *Cotton v. John W. Eshelman & Sons, Inc.,* 137 Ga. App. 360, 363 (3) (223 SE2d 757) (1976); *Hilliard v. Canton Wholesale Co.,* 151 Ga. App. 184 (1) (259 SE2d 182) (1979). Nor does the absence of the original daily time sheets render the printouts inadmissible; this may have gone to their credit but not to their admissibility. See *Strother v. S. Expressway Radio,* 132 Ga. App. 771, 773 (2) (209 SE2d 93) (1974). Likewise, monthly statements which were either drafted by Hendricks or prepared under his supervision were admissible as summaries of the computer printouts which were already in evidence. *Cotton v. John W. Eshelman & Sons, Inc.,* supra, at 362 (2); *Smith v. Bank of the South,* 141 Ga. App. 114 (232 SE2d 629) (1977).

4. Appellant complains that the testimony of the local attorney associated with the case to the effect that he had not been paid for his legal services was irrelevant and prejudicial and that it was inadmissible evidence of character and conduct under Code § 38-202. The testimony of this witness was actually favorable to appellant, in that it was consistent with his contention that the legal services did not warrant compensation of any of the associated attorneys. Thus, we cannot agree that the evidence impugned his character or that it was otherwise harmful or prejudicial to him. The motion for mistrial based on this ground was properly denied. Cf. *Sellers v. White,* 104 Ga. App. 148, 149 (4) (121 SE2d 385) (1961).

5. Nor are we able to agree with appellant's assertion, unsupported by citation of authority, that reversible error occurred through the refusal of the trial court to give his request to charge on failure of consideration. The only thing promised by appellee was to render legal services and there is no dispute that legal services were provided. Appellant's true grievance is that he did not prevail against the revocation of his hospital privileges, but appellee did not contract to regain these privileges, nor did it guarantee that appellant would receive them. Compare *DeLoach v. W. D. Eyre & Co.,* 46 Ga. App. 155 (3) (167 SE 123) (1932). Appellee provided capable legal services at an agreed upon rate of compensation, and there was no evidence of noncompliance with a condition of the contract. See generally Code § 20-902. Cf. *Fagala v. Morrison,* 146 Ga. App. 377 (1) (246 SE2d 408) (1978).

6. Appellant also contends that the evidence failed to raise the issue of account stated and that the charge thereon was thus erroneous. While agreement as to amount and a promise to pay are essential elements of an account stated, "an account may become stated even without express agreement. If an account is rendered to the debtor and he fails to object to it, a jury 'might be authorized to infer that the failure of the party to raise objection was an implied

agreement on his part that the account was correct . . . ' [Cits.]" *Lawson v. Dixie Feed & Seed Co.,* 112 Ga. App. 562, 564 (2) (145 SE2d 820) (1965). It is undisputed that written statements of account were mailed to and received by Dr. Reisman and that he failed to object to the amount or even to respond at all. The jury instructions were further supported by Dr. Reisman's own testimony conceding that the number of hours billed was correct and that the stated hourly rate was expressly agreed to by him. This enumeration of error is also without merit.

7. Hendricks was allowed to testify over objection in rebuttal to statements of Dr. Reisman to the effect that Hendricks had not interviewed certain witnesses prior to the hospital authority hearing. This testimony was not merely cumulative or repetitive as asserted by appellant and was not shown to have been harmful or prejudicial so as to provide a ground for reversal.

8. For the foregoing reasons a new trial is not warranted for any reason assigned.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

ARGUED JULY 1, 1980 — DECIDED
SEPTEMBER 4, 1980.

*David S. Marotte,* for appellant.
*William G. McDaniel, Alan L. Dye,* for appellees.