37539. BARKER et al. v. COUNTY OF FORSYTH et al.

GREGORY, Justice.

The plaintiffs (appellants) in this case have plans to construct and operate an "alpine slide" on Sawnee Mountain in Forsyth County. The defendants (appellees) are county officials and employees responsible for zoning. When defendants declined to give approval for the project plaintiffs began this action seeking mandamus for the purpose of compelling approval and issuance of necessary permits. The trial court entered an order dismissing the corporate plaintiff, Inventex, as a party and denying plaintiffs' motion for summary judgment. The court determined the issues relating to its order were of such importance to the case immediate review should be had. This court granted plaintiffs' application for interlocutory appeal.

There is evidence in the record considered by the court below as follows: Plaintiff Barker is the owner of a substantial tract of land located on Sawnee Mountain in Forsyth County. He is an architect. Using his own skill as an architect he began to draft plans to develop an alpine slide on the slope of the mountain. An alpine slide is a device made of concrete and asbestos which provides a ride down a mountain slope somewhat like a bobsled. Barker communicated with plaintiff Albertsson, a Vermont resident, who is the sole shareholder of Inventex, a Vermont corporation. The corporation manufactures alpine slides. Negotiations followed in which Barker planned to sell his property to Albertsson and Inventex and they were to install the alpine slide. All three were to participate in the operation of the slide after construction.

The property was zoned agricultural. Barker first sought to have the tract rezoned commercial. This was refused in January 1979. Barker contends he met with the zoning administrator in February 1979 who told Barker the project would be permissible under existing agricultural zoning as a commercial recreation use if certain modifications were made. Barker also contends he met with other zoning officials who gave similar assurances. While the record reflects the zoning administrator admits having made certain assurances,

other officials dispute the contention that they made such assurances. Barker and Inventex proceeded with engineering, marketing and traffic studies, incurring expenses. In December 1979 Forsyth County amended its zoning ordinance so as to delete commercial recreation as a permitted use in agricultural districts. Barker set out in January and February of 1980 to obtain the necessary grading, building and use permits from defendants. The grading permit was issued conditioned upon there being a building permit issued. The planning commission of the county undertook consideration of the application for a use permit and referred the matter to a public hearing. When this occurred plaintiffs contended the action of the defendants amounted to a denial of their request. This lawsuit was then begun.

1. The trial court dismissed Inventex as a party plaintiff for the reason that it is a foreign corporation which has not obtained a certificate of authority to transact business in Georgia. The corporation code (Title 22) contains two provisions relating to this issue:

"No foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority so to do from the Secretary of State . . ." (Code Ann. § 22-1401 (a)).

"No foreign corporation that under this Code is required to obtain a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this State unless before commencement of the action it shall have obtained such a certificate." (Code Ann. § 22-1421 (b)).

Inventex did not obtain a certificate of authority. It was required to do so if it was transacting business in Georgia. Therefore, if Inventex was transacting business in Georgia it cannot maintain this action. We must determine if the trial court properly found that Inventex was transacting business.

The term "transacting business" as used in a registration statute such as Code Ann. § 22-1401 is not to be confused with the same term when used in a jurisdictional statute subjecting a foreign corporation to service of process in a suit brought within a state. In a jurisdictional statute only minimal contact with the state is required because the limited purpose of the statute is to hold the corporation accountable for an act connected with its entry into the state. Under the registration statute more substantial activity within the state is required because significant duties, and perhaps penalties, may be incurred. 17 Fletcher, Cyclopedia of the Law of Private Corporations, § 8465 (1977); 31 Mercer L. Rev. 43 (1979).

The Georgia Registration statute provides a non-exclusive list of twelve circumstances which shall not constitute transacting business.

Code Ann. § 22-1401 (b) (1) through (12). One circumstance (11) is "an isolated transaction not in the course of a number of repeated transactions of like nature." The issue at hand will be resolved by determining whether Inventex was involved in transacting business or merely conducting an isolated transaction.

In *Winston Corp. v. Park Electric Co.,* 126 Ga. App. 489 (191 SE2d 340) (1972), the Court of Appeals held that the issues of both "doing business" and "isolated transaction" are to be determined according to the circumstances of each case. One must look to the extent of activities. Citing 20 CJS 48, Corporations, § 1830, the court approved the principle that an isolated transaction indicates no purpose of continuity of conduct whereas doing business implies an intent to conduct a continuous, as opposed to a temporary, business.

According to the affidavit of one of the agents of Inventex, the corporation spent $23,836.18 designing, surveying and planning the alpine slide project. Staff members spent two weeks in Georgia accomplishing some of these tasks. The record contains a memorandum of agreement between Barker and Inventex regarding the sale of land on Sawnee Mountain. The sale is conditioned upon the securing of necessary permits to construct the slide and support facilities. A provision is made for the lease to Inventex of land on top of the mountain for a scenic lookout for its customers. All these facts indicate Inventex is proposing to conduct a continuous business. There is no indication Inventex plans to construct and operate other slides in Georgia and in that sense there is a singleness characterizing the activities of Inventex, but the extent of activity is considerable and continuity is indicated. The trial court properly found Inventex was doing business in Georgia and could not maintain this action without first obtaining a certificate of authority.

The court below dismissed Inventex as a party plaintiff without indicating whether dismissal was with or without prejudice. That dismissal is construed by this court to be without prejudice. The basis of dismissal is the failure of Inventex to comply with a precondition to reaching the merits of the claim. A dismissal of this nature must be without prejudice. *National Heritage Corp. v. Mt. Olive Memorial Gardens,* 244 Ga. 240 (260 SE2d 1) (1979); *Douglas v. Douglas,* 238 Ga. 452 (233 SE2d 195) (1977).

2. The existence of vested rights under zoning ordinances rests upon the same constitutional footing which precludes retroactive application of zoning ordinances. The majority rule for vested rights is:

"A landowner will be held to have acquired a vested right to continue the construction of a building or structure and to initiate and continue a use despite a restriction contained in an ordinance

where, prior to the effective date of the ordinance, in reliance upon a permit theretofore validly issued, he has, in good faith, made a substantial change of position in relation to the land, made substantial expenditures, or has incurred substantial obligations." 3 Rathkopf, Law of Zoning and Planning, § 57-3; See, 49 ALR3d 13, § 3.

We pronounced this general rule a "sound principle of law" in *Clairmont Development Co. v. Morgan,* 222 Ga. 255, 258 (149 SE2d 489) (1966). A different rule was implied in *Keenan v. Acker,* 226 Ga. 896 (178 SE2d 196) (1970). There we said a validly issued building permit could not be withdrawn on account of a new zoning ordinance even though the facts showed no substantial change of position by the landowner. The issuance of the permit was enough to vest the right to build. We have expressly held where a valid building permit is issued no showing of substantial reliance is necessary to vesting of rights. *Clark v. International Horizons, Inc.,* 243 Ga. 63, 65 (252 SE2d 488) (1979). We have on a number of other occasions considered the issue of vested rights subsequent to and in reliance on issuance of valid permits. *City of Atlanta v. Westinghouse Electric Corp.,* 241 Ga. 560 (246 SE2d 678) (1978); *Springtime, Inc. v. Douglas County,* 228 Ga. 753 (187 SE2d 874) (1972); *Craig v. City of Lilburn,* 226 Ga. 679 (177 SE2d 75) (1970). We have before us now a case in which there are allegations of substantial expenditures in reliance upon an existing zoning ordinance plus verbal expressions of approval given by officials. No permit has been issued.

We adopt the rule recognized in Illinois. Where a landowner makes a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based upon an existing zoning ordinance and the assurances of zoning officials, he acquires vested rights and is entitled to have the permit issued despite a change in the zoning ordinance which would otherwise preclude the issuance of a permit. Cos Corp. v. City of Evanston, 27 Ill. 2d 570 (190 NE2d 364) (1963); 3 Rathkopf, Law of Zoning and Planning, § 57-5.

There are disputed issues of fact regarding whether or not substantial expenditures were made and assurances of zoning officials were given. The trial court properly denied summary judgment.

*Judgment affirmed. Jordan, C. J., Marshall, Clarke, and Smith, JJ., concur. Hill, P. J., dissents.*

DECIDED SEPTEMBER 8, 1981.

*Alford Wall, Douglas T. Noonan,* for appellants.
*Lynwood D. Jordan, Jr.,* for appellees.

HILL, Presiding Justice, dissenting.
For the reasons that follow, I find it necessary to dissent to both Divisions 1 and 2 of the majority opinion.

In Division 1, the majority holds that Inventex is "transacting business" in Georgia within the meaning of Code Ann. § 22-1401. But as the majority recognizes, the "facts indicate Inventex is *proposing* to conduct a continuous business" (emphasis supplied), the twelve exclusions in § 22-1401 (b) (1) through (12) are not exclusive, and more substantial activity within the state is required under the registration statute than under a jurisdictional statute. Inventex has yet to conduct its business in Georgia; indeed, Inventex has not yet decided to conduct business in Georgia but is merely investigating the possibility. In effect, Inventex has an option to purchase certain property in Georgia if it decides to conduct business here; i.e., if a building permit for the project is secured.

Although no Georgia case has decided this precise issue, the Ninth Circuit has pointed out that: "A distinction can be drawn between an act preparatory to entering business and an act of carrying on or pursuing business." Worcester Felt Pad Corp. v. Tucson Airport Auth., 233 F2d 44, 49 (9th Cir. 1956). That court then held that the act of executing a lease was merely incidental and preliminary to the business in which the corporation ordinarily engaged and did not constitute "entering upon, doing, or *transacting* any *business,* enterprise or occupation" (emphasis supplied) within the meaning of a state statute declaring void any such acts taken by a foreign corporation prior to obtaining a license to do business. Likewise, I would hold that obtaining an option and conducting a feasibility study for a project in Georgia do not constitute "transacting business" in Georgia within the meaning of Code Ann. § 22-1401. Worcester Felt Pad Corp. v. Tucson Airport Auth., supra; FCA Properties v. Hudson Oil Co., 192 NW 2d 390 (Mich. App. 1971).

In Division 2, the majority cites Cos Corp. v. City of Evanston, 190 NE2d 364, (Ill. 1963), for the proposition that a landowner may acquire a *vested* right to use his land in a permitted manner—notwithstanding a later change in the zoning ordinance that predates the issuance of a building permit—by virtue of "substantial expenditures" based upon an existing zoning ordinance and "assurances" from zoning administrators that the contemplated use is permitted by the existing ordinance. But two salient facts distinguish Cos Corp. v. City of Evanston, supra, from the case at

hand: There the *use* (a professional office building for doctors and dentists) was permitted by the zoning both before and after the amendment at issue; the amendment merely increased the number of off-street parking spaces required per square foot of floor area. Additionally, the building permit was applied for *before* the amendment was enacted and action on it was apparently delayed in what proved to be a vain attempt to render the amendment applicable to the project at issue.

Neither of those facts appear here: the proposed use itself is prohibited by the amended zoning ordinance, and no application for a building permit was filed until after the amendment had taken effect. Thus we have considerably expanded on a case which represents an extension of a minority rule. The majority of jurisdictions hold that the issuance of a building permit alone confers no vested rights as against a change in the zoning ordinance, 3 Rathkopf Ch. 57 § 1, p. 57-2; while the minority hold that the issuance of a valid building permit under which the landowner in good faith makes substantial expenditures or incurs substantial obligations, does protect the applicant from a subsequent change that would otherwise render the permit invalid. 3 Rathkopf Ch. 57 § 3, p. 57-6. A smaller minority hold that the issuance of a valid building permit alone is binding notwithstanding a subsequent change in zoning. 3 Rathkopf Ch. 57 § 2, p. 57-4. Georgia formerly took the minority within the minority view. See *Keenan v. Acker, Clark v. International Horizons, Inc.,* supra, cited by the court. But the court today adopts the Illinois rule which goes beyond the two minority rules, 3 Rathkopf Ch. 57 § 4, p. 57-8, and abandons the sound requirement that no vested rights accrue until and unless a building permit issues.

I can only conclude that the majority has substituted "assurances" of zoning administrators for the requirement of a building permit. What were these "assurances"? That the project would be permissible under the existing zoning (if certain modifications were made)? If so, then the administrator did no more than correctly interpret the existing ordinance, which the landowner could have done for himself, so that the "assurance" was surplusage. Only if the administrator also assured the landowner that the existing ordinance would not be changed would the landowner be entitled to rely on the "assurances" of the administrator, and such an assurance from the administrator would be ultra vires. Code Ann. § 89-903 provides: "Powers of all public officers are defined by law, and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of a power not conferred." A zoning administrator cannot bind the county commissioners not to amend the zoning ordinance. Nor can the zoning administrator in

Forsyth County issue a building permit. Code Ann. § 69-1212. In light of the court's decision today, in order to preserve their power to amend zoning ordinances county commissioners should instruct zoning personnel not to give advice to citizens as to whether a particular use is permissible under the existing zoning ordinance. This is an intolerable result and I therefore must dissent.