## 73556. ROBERTS v. CHANCELLOR FLEET CORPORATION et al.

(354 SE2d 628)

Pope, Judge.

Appellant William L. Roberts, Fulton County Tax Commissioner, appeals from a decision by the trial court holding appellees not liable for the payment of approximately $30,000 in 1985 Georgia ad valorem taxes. The facts, as stipulated by the parties and as determined by the trial court, were as follows: Appellee Chancellor Fleet Corporation is a Massachusetts corporation with its principal place of business in Boston, Massachusetts. Chancellor is in the lease underwriting business, which involves the purchase and lease of equipment. The equipment is then sold to individual investors, who hold the equipment in a Massachusetts grantor trust, with Chancellor serving as trustee. Since 1983 Chancellor has maintained an office in Atlanta, Georgia. This office employs one sales representative, who solicits orders for the lease of equipment. These orders must be accepted at Chancellor's office in Boston. Chancellor also delivers equipment to its Georgia lessees.

Appellee Genuine Parts Company is a Georgia corporation with its principal place of business in Fulton County, Georgia. In 1982 Chancellor as lessor and Genuine Parts as Lessee executed a master lease agreement. In 1984 Chancellor and Genuine Parts executed an agreement whereby Chancellor would purchase 24 tractors (of the type used on tractor-trailer rigs) from Volvo White Truck Corporation and then lease the tractors to Genuine Parts. Chancellor subsequently assigned both contracts to Chancellor Fleet Corporation as trustee for the Winfield Chancellor Trust, a Massachusetts grantor trust whose only activity is to hold, conserve and administer trust property.

The 24 tractors were manufactured by Volvo at its Virginia plant. On December 31, 1984 Volvo sold and transferred title to the 24 tractors to Chancellor Fleet Corporation as trustee, which allowed the 94 investors of the Winfield trust to take a federal income tax depreciation deduction for tax year 1984. On January 2, 1985 an independent third-party delivery company picked up the 24 tractors at the Virginia Volvo plant and delivered them to a Volvo facility in Forest Park, Georgia. The first shipment of tractors arrived in Georgia on January 3; the record shows that the tractors had never been located in Georgia prior to that date. The 24 tractors were delivered to and accepted by Genuine Parts on February 7, 1985. Genuine Parts had specifically requested that the tractors not be delivered to Georgia until after January 1, and Chancellor had in turn requested that Volvo not ship the tractors to Georgia until after that date.

Chancellor as trustee executed the tag and title applications from

its Boston office on February 7, 1985. These applications were submitted to the office of appellant Fulton County Tax Commissioner by an agent of Genuine Parts on February 20, 1985. Appellant initially rejected the title application because Chancellor listed its residence as Boston. Chancellor amended the application to show its county of residence as Fulton. Appellant then refused to issue 1985 tags for the 24 tractors because Georgia ad valorem taxes for that year had not been paid. Appellees filed an affidavit of illegality against appellant tax commissioner and posted a surety bond. The 24 tags were then issued. In September 1985 appellees paid the 1985 ad valorem taxes, plus interest, under protest. The trial court, sitting without a jury, found that the 24 tractors were not owned in Georgia as of January 1 within the meaning of OCGA § 48-5-471 and entered judgment for appellees in the amount of $30,152.80. Appellant filed his notice of appeal on December 11, 1985. We affirm.

1. We consider first appellant's contention that Chancellor was barred from bringing this action because it failed to obtain a certificate of authority as required by OCGA §§ 14-2-310 and 14-2-331 (b) prior to commencing same. OCGA § 14-2-331 (b) provides that "[n]o foreign corporation . . . *required to obtain a certificate of authority* [pursuant to OCGA § 14-2-310] shall be permitted to maintain any action, suit, or proceeding in any court of this state unless before commencement of the action it shall have obtained such a certificate." (Emphasis supplied.) Thus, the applicability of section 14-2-331 (b) is contingent upon whether Chancellor was transacting business within the state as that term is used in section 14-2-310, and therefore was required to obtain a certificate of authority under that section. *Barker v. County of Forsyth*, 248 Ga. 73 (1) (281 SE2d 549) (1981).

Appellant argues that because Chancellor has maintained a continuous presence in this state since it opened an office here in 1983, it has clearly transacted business within the meaning of the relevant code section. Appellant also cites as relevant to this issue the fact that Chancellor has a sales representative in the state, has a Georgia telephone number listed for its office, and keeps contract forms in its Georgia office. Lastly, appellant argues that Chancellor transacted business because its Georgia representative has had dealings with Genuine Parts and because Genuine Parts signed its lease agreement with Chancellor in Georgia.

We do not agree with appellant that these limited activities constitute transacting business within the state pursuant to OCGA § 14-2-310. "The term 'transacting business' as used in a registration statute such as [OCGA § 14-2-310] is not to be confused with the same term when used in a jurisdictional statute. . . . In a jurisdictional statute only minimal contact with the state is required because the

limited purpose of the statute is to hold the corporation accountable for an act connected with its entry into the state. Under the registration statute more substantial activity within the state is required because significant duties, and perhaps penalties, may be incurred. [Cits.]" *Barker*, supra at 74.

OCGA § 14-2-310 (b) (6) provides that a foreign corporation "shall not be considered to be transacting business in this state, for the purpose of qualification under this chapter, solely by reason of carrying on in this state any one or more of the following activities: . . . Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts and where such contracts do not involve any local performance other than delivery and installation." We believe that the record clearly shows that Chancellor's activities within this state were of the type specifically described in this exemption. Chancellor's agent had no authority to accept contracts on behalf of the corporation and his duties were otherwise limited to "soliciting or procuring orders." It appears that Chancellor's only other activity in the state was to make deliveries of equipment pursuant to the terms of its lease agreements. Lastly, we fail to see the relevance in the fact that Chancellor may have performed some of these activities in connection with its dealings with Genuine Parts. Based on the foregoing, we affirm the trial court's finding that Chancellor was not required to obtain a certificate of authority prior to filing its affidavit of illegality. See, e.g., *Atlas Match Corp. v. Berry Realty Co.*, 142 Ga. App. 588 (236 SE2d 554) (1977); *Ely & Walker v. Dux-Mixture Hdwe. Co.*, 582 FSupp. 285 (1, 2) (N.D. Ga. 1982), aff'd, 732 F2d 821 (11th Cir. 1984); *Al & Dick, Inc. v. Cuisinarts, Inc.*, 528 FSupp. 633 (2) (N.D. Ga. 1981).

2. We next consider appellant's contention that the trial court erred in concluding that the 24 tractors were not subject to 1985 Georgia ad valorem taxes. OCGA § 48-5-471 provides that "[e]very motor vehicle owned in this state on January 1 is subject to ad valorem taxation by the various tax jurisdictions authorized to impose ad valorem tax on property." Thus, we are called upon to determine the tax situs of the 24 tractors as of January 1, 1985.

The situs of personal property, including motor vehicles, for tax purposes is normally the county and state where the owner resides. Property used in connection with a trade or business acquires a tax situs where it is more or less permanently situated, i.e., where the business is located. *Collins v. Mills*, 198 Ga. 18 (2) (30 SE2d 866) (1944); 1962 Op. Att'y Gen. 483. " 'The power of taxation by any State is limited to persons, property, or business within its jurisdiction. Personal property, in the absence of any law to the contrary, follows the person of the owner, and has its situs at his domicile. But,

for the purposes of taxation, it may be separated from him, and he may be taxed on its account at the place where it is actually located. . . . If the State has actual jurisdiction of the person of the owner, it operates directly upon him. If he is absent and it has jurisdiction of his property, it operates upon him through his property.' [Cit.]" *Lewis & Holmes &c. Corp. v. City of Atlanta*, 195 Ga. 810, 814 (25 SE2d 699) (1943).

Appellant argues that although the personal property in the present case was not physically present on the relevant taxing date, under the business situs rule it was permanently situated in this state on January 1 and thus had a Georgia tax situs on that date. We agree with appellant that the property at issue here was ultimately destined for a Georgia business concern and ultimately would become permanently situated here. We find, however, that these events had not occurred as of the relevant taxing date. Genuine Parts did not take delivery of the tractors until February 7, 1985 and its lease of the property did not become effective until that time. Appellant does not dispute that Chancellor, not Genuine Parts, owned the subject property as of January 1. Thus, we find the business situs rule inapplicable in that the property was not permanently situated within the state until the property had been accepted by Genuine Parts.

We also note the inapplicability of the authority cited by appellant. In both *Jones v. Morse Bros. Lumber Co.*, 171 Ga. 753 (156 SE 587) (1931), and *Mitchell County v. Phillips*, 152 Ga. 787 (111 SE 374) (1922), the issue was one of ownership for purposes of determining tax situs, a fact which is clearly not disputed here. Moreover, we believe that these cases support our conclusion that anticipated future events do not determine tax situs. Thus, we affirm the decision by the trial court.

3. Because we have concluded that no Georgia ad valorem taxes were due for the 1985 tax year, we find it unnecessary to consider in great detail appellant's argument that the transaction in the case sub judice was an illegal scheme to avoid the payment of taxes. Although the parties clearly structured their business arrangements to maximize tax advantages and to minimize tax liabilities, we have carefully reviewed the record and find no merit in appellant's assertion that these arrangements were illegal or done with the intent to defraud.

*Judgment affirmed. Carley, J., concurs. McMurray, P. J., concurs in judgment only.*

DECIDED FEBRUARY 9, 1987 —
REHEARING DENIED MARCH 9, 1987 —

*Harold T. Daniel, Jr., William C. Gentry*, for appellant.
*John A. Blackmon, Frederick G. Boynton, Edward H. Wasmuth,*

*Jr.*, for appellees.