### DECIDED IN THE

# SUPREME COURT OF GEORGIA

#### AT THE

## MARCH TERM, 1905.

123    1
f129   557

CITY OF ELBERTON *et al. v.* PEARLE COTTON MILLS.

1. While, upon application duly made, equity will enjoin a municipal corporation from taking a water supply from a stream in violation of the rights of a riparian owner further down it, and to his damage, yet when a municipal corporation held an election, in accordance with the constitution, to determine the question of the issuing of bonds for the construction of a system of waterworks, and, after a favorable vote, issued and sold the bonds, purchased land bordering on the stream some three miles from its corporate limits for the purpose of obtaining water from it, built a pumping station and laid pipes in the city and connected it with the stream, an owner of land bordering on it some miles further down its course, who knew all the facts and the intention to use water therefrom, but made no objection thereto, and waited to apply for an injunction until the works were completed and in operation, is not entitled to an interlocutory injunction to stop the continuation of the operation of the waterworks; especially where the evidence of whether there will be any damages is conflicting.
2. The question here determined was not involved or decided in the case of *City of Elberton* v. *Hobbs,* 121 *Ga.* 749, 750, or in *Chestatee Pyrites Co.* v. *Cavenders Creek Co.,* 118 *Ga.* 255.
3. Where the complaining riparian owner was a corporation having but three stockholders, who were also its officers, knowledge by them of the facts stated in the first headnote above affected the company.

Submitted April 18, — Decided May 12, 1905.

Injunction.    Before Judge Holden.    Elbert superior court. March 3, 1905.

The Pearle Cotton Mills, a corporation, as the owner of certain land through which flows a creek, and of a mill operated thereby, filed its petition against the City of Elberton and its mayor, seeking to enjoin the taking of water from the creek to supply the city, which it was alleged was about to be done at a point on the

stream above the land of the plaintiff. Resulting damage to its property was alleged. Defendants admitted the intention to use water from the stream, but denied that any injury would result to the plaintiff therefrom. They further alleged, that the city had advertised and held an election for the purpose of determining whether bonds should be issued to construct the waterworks; that the election having resulted in favor of bonds, they were issued and sold to the amount of $40,000, that thereupon the city began to purchase land on the creek at a point where it has since taken water, for that purpose, and proceeded to purchase pipe and machinery, and to employ hands and contractors to build and complete its waterworks, and to dig ditches in the city and lay pipes connecting it with the creek; that the whole work was completed at an expense of about $50,000; that the waterworks were in actual use, and the water was being pumped from the creek into the city before the petition for injunction was presented; that the plaintiff and its officers and stockholders had full knowledge of all the facts, and stood by without objection or doing anything to put the city on notice that any injury would result, or damage for trespass would be claimed. The answer alleged (and there was no denial thereof) that there were but three stockholders of the plaintiff, who were also respectively president, vice-president, and secretary and treasurer. There was no direct denial that they had knowledge of the facts pleaded by the defendant. Two of them testified, that "said city never notified petitioner that it intended to use said creek for said waterworks, and certainly petitioner had no notice that if it intended so to do it would not, before undertaking to withdraw said water, either acquire a right by proper agreement or through the exercise of the power of eminent domain." One of them testified that he did not know that the defendants or their agents had pumped or were pumping water from said creek before this suit was filed, and never learned of it until afterward. Another testified, that the City of Elberton had not condemned or sought to condemn any right, title, or easement to withdraw water from the creek, and that neither the mill nor any one for it had granted any such right to the city. An injunction was granted, and the defendant excepted.

*J. N. Worley,* for plaintiff in error. *T. J. Brown,* contra.

LUMPKIN, J. (After stating the facts.) 1, 2. While it is true that upon proper application, made in due time, equity will enjoin a municipal corporation from taking a water supply from a stream, in violation of the rights of a riparian owner further down such stream, and to his damage (*City of Elberton* v. *Hobbs*, 121 *Ga.* 749, 750); nevertheless the complaining owner must act with reasonable promptness. If he waits until the municipal corporation has sold bonds, bought land bordering upon the stream at a point above his property for the purpose of constructing waterworks and using water from the stream, and until at large expense a system of water-pipes has been laid from the stream to the city and through the streets, and, though having full knowledge of all the facts, makes no objection, gives no notice of any claim of injury, and begins no proceeding till after the pipes have been connected with the stream, and the waterworks have actually begun operation, he is not entitled to an interlocutory injunction which will stop the use of the water by the city. This is especially true where the evidence as to whether any damage would result to the property or not is conflicting. The point here determined was not raised or decided in the case of the *City of Elberton* v. *Hobbs*, supra (which was begun some months earlier), or in *Chestatee Pyrites Co.* v. *Cavenders Creek Co.*, 118 *Ga.* 255. See *Griffin* v. *Augusta & Knoxville Railroad*, 70 *Ga.* 164; *Wood* v. *Macon & Brunswick Railroad*, 68 *Ga.* 539; *Darnell* v. *Southern Marble Co.*, 94 *Ga.* 231 (4); 2 Pom. Eq. Jur. (2d ed.) §817; 3 Id. §1359; 1 Beach,•Inj. §44; 1 High, Inj. (3d ed.) §7.

3. There being but three stockholders of the plaintiff, who were also its officers, knowledge by them of the facts affected the company with knowledge. *Ga. R. Co.* v. *Hamilton*, 59 *Ga.* 174 (3); *Mitchell* v. *Southwestern Railroad*, 75 *Ga.* 398; s. c. 69 *Ga.* 114, 124; *Guarantee Co.* v. *East Rome Town Co.*, 96 *Ga.* 511.

*Judgment reversed. All the Justices concur, except Candler, J., absent.*