26929. SPRINGTIME, INC. v. DOUGLAS COUNTY.

Submitted January 10, 1972—Decided March 9, 1972.

*Payne, Barlow & Green, William O. Green, Jr.,* for appellant.

*Harold A. Lane,* for appellee.

HAWES, Justice. ■ The appeal here is from the grant of a temporary injunction after the introduction of evidence and argument of counsel for both sides. Appellee has filed in this court a motion to dismiss based on the contention that such a judgment is not an appealable one in the absence of a certificate of immediate review. No such certificate was filed. Appellee's contention is based on these circumstances: The legislature, in amending Section 1 of the Appellate Practice Act of 1965 by the Act approved April 8, 1968 (Ga. L. 1968, p. 1072) inserted a semicolon at the end of subparagraph 2 of paragraph (a) of that section. Ga. L. 1968, p. 1072 (*Code Ann.* § 6-701 (a) (2)). Section 1 (a) of the Appellate Practice Act of 1965 defines and enumerates judgments appealable under the provisions of that Act. As originally enacted in 1965 Sec. 1 (a) contained three subparagraphs. Subparagraph 1 permitted an appeal from a final judgment. Subparagraph 2 permitted an appeal from a judgment which would have been final had it been rendered as contended by the appellant. Subparagraph 3 enumerated 11 separate categories of judgments appealable notwithstanding such judgments are not final, including the granting or refusing of an application for an interlocutory injunction. All of the matters contained in the three subparagraphs as originally enacted were clearly intended by the legislature to be equal and coordinate subjects, neither of the subparagraphs being dependent one upon the other but dependent on subsection (a), which reads: "Appeals may be taken to the Supreme Court . . . in the following instances": As originally enacted a semicolon followed subparagraph 1 and a period followed subparagraph 2 and subparagraph 3. The 1968 Act struck original subparagraph 2 relating to the appealability of judgments which would have been final and substituted therefor a provision permitting an appeal from any judgment certified within 10 days of its entry by the trial judge for immediate review. As re-enacted, a semi-

colon followed that subparagraph, and appellee contends that that indicates an intention on the part of the legislature that all that follows in subparagraph 3 of Section 1 (a) shall be dependent upon the matter contained in subparagraph 2 of Section 1 (a).

Disregarding the fact that as enacted by the legislature the three subdivisions of Section 1 (a) of the Appellate Practice Act which we have heretofore referred to as "Subparagraphs" are set up in the Acts as separate paragraphs, this contention presents for our consideration the question as to what is the effect of the legislature separating the matter contained in subparagraph 2 and the matter contained in subparagraph 3 by a semicolon. The semicolon is normally employed in marking off a series of sentences or clauses of coordinate value, that is, to separate consecutive phrases or clauses which are independent of each other grammatically, but dependent alike on some word preceding or following. 79 CJS 1038. McLeod v. Nagle, 48 F2d 189, 191 (CCA9, 1931); In Re Jones' Estate (Cal. S. Ct., 1961) 360 P2d 70, 73. It is apparent that it was the intent of the legislature in providing that "Appeals may be taken to the Supreme Court . . . in the following instances": and, following that provision with the three subparagraphs each separated by a semicolon that each of said subparagraphs was to be mutually independent of one another and dependent upon the matter contained therein preceding the colon in subsection (a) of said Section 1, and that each of said subparagraphs was intended to stand alone in conjunction with the matter contained in subsection (a) and without relation to the matter contained in any of the other subparagraphs of that section. There is no merit in the motion to dismiss and the same is denied.

■ The facts upon which the injunction in this case was granted are substantially these: Defendant owned and operated an existing mobile home park located in an area which, subsequent to the establishment of such park, had been zoned for single-family residences, a zoning category excluding mobile home parks. The existing park was lo-

cated on a portion of a larger tract of land owned by the defendant. In May, the defendant applied to the building inspection department of Douglas County for a building permit to erect or develop a trailer park. The application therefor was accompanied by a certificate of the Douglas County Board of Health approving the installation of septic tanks on 116 lots. A permit dated May 27, 1971, was issued. The defendant proceeded immediately with the development of the addition to its mobile home park, utilizing therein a sum of borrowed money in excess of $100,000. About the middle of July, the Chairman of the Board of Commissioners of Roads and Revenues of Douglas County first acquired personal knowledge that the addition to the defendant's mobile home park was in the process of construction or development. He instructed the chairman of the planning and zoning commission to advise the officials of the defendant corporation that it was in violation of the zoning ordinance and to cease and desist from the development of the park until they could apply for and have approved a change in the zoning of the area involved. Officials of the defendant were notified but they contended that they were not in violation of the ordinance, and on July 19, 1971, their attorney wrote to the chairman of the planning and zoning commission advising him that it was the defendant's position that it was not in violation of the law. In the meantime, the defendant had proceeded with the development of its park and substantially completed the same and commenced renting spaces. No further action was taken by the county until August 31, 1971, when a draft tendering a refund of the fee paid for the building permit was sent by the Chairman of the Board of Commissioners to the defendant. The defendant refused the tender of the refund and returned the check to the plaintiff. The complaint was filed on September 11, 1971. After hearing evidence and argument of counsel and taking the matter under advisement, the trial court granted a temporary injunction restraining the defendant from the further development or construction of mobile home sites and the

renting or leasing of any additional mobile home sites not currently rented or leased and situated upon the tract of land developed by the defendant as unit 2 of its mobile home park.

The court erred in granting the temporary injunction. In the view which we take of this matter, the issues in this case are absolutely controlled by the doctrine of stale demands or laches. The plaintiff had notice of the proposed extension of defendant's mobile home park on May 27, 1971, when through appropriate employees and officials of the county it issued to the defendant a building permit for the purpose of developing such extension. In reliance upon the validity of that permit the defendant proceeded with the construction. The plaintiffs had further notice that the defendant was in violation of the ordinance and that the defendant was actively engaged in the development of such extension in the middle of July, but waited another 45 days before taking any action to compel the defendant to stop its work. In the meantime, the record shows, the defendant had substantially, if not wholly, completed the installation of streets, underground utilities and other facilities for the development of its land into a mobile home park. The mere informal advice to the defendant by the chairman of the zoning commission on or about the 18th or 19th of July that the defendant was in violation of the zoning ordinance and should make application to have the property rezoned before proceeding was not sufficient to relieve the plaintiff of the consequences of its laches or acquiescence when, as the record shows, the defendant, through its attorney, gave to the chairman of the planning commission unequivocal notice that it deemed itself to be operating within the law, and had no intention of desisting from its purpose merely because of such advice. *Holt v. Parsons*, 118 Ga. 895, 899 (45 SE 690). A party is not entitled to an injunction when, with full knowledge of his rights, he has been guilty of delay and laches in asserting them, and has negligently suffered large expenditures to be made by another party on whom great injury would be in-

flicted by the grant of the injunction. *Holt v. Parsons,* supra; *City of Elberton v. Pearle Cotton Mills,* 123 Ga. 1 (1) (50 SE 977); *Whipkey v. Turner,* 206 Ga. 410, 415 (57 SE2d 481); *Black v. Barnes,* 215 Ga. 827, 829 (114 SE2d 38); *Goodwin v. First Baptist Church,* 225 Ga. 448, 451 (169 SE2d 334).

Since injunction is the only relief sought by the plaintiff, and since it is plain under the principles announced above and the facts shown by the record, that the plaintiff cannot have that relief, it follows that the trial court erred in granting the temporary injunction.

*Judgment reversed. All the Justices concur.*