A97A2286. BEUGNOT v. COWETA COUNTY et al.
(500 SE2d 28)

RUFFIN, Judge.

Cecil Beugnot, the owner of a mobile home park in Coweta County, sought a writ of mandamus in superior court against Coweta County, the county's Board of Commissioners ("the Board") and others, challenging the Board's denial of his application for a building permit for the mobile home park. Beugnot then moved for partial summary judgment, claiming, inter alia, that Coweta County was estopped from denying the permit and that he had a vested right in developing the mobile home park on the property. The defendants responded and filed a cross-motion for summary judgment, claiming that Beugnot had abandoned his right to operate and develop the mobile home park, which had been classified by the county as a nonconforming use. The superior court granted summary judgment to the defendants and denied Beugnot's motion for partial summary judgment. We granted Beugnot's application for discretionary appeal, and for reasons which follow, we reverse.

In zoning matters, when a permit is sought under the terms set out in a county's zoning ordinance, the landowner must present his case on its facts and on the law to the local governing body. *Dougherty County v. Webb*, 256 Ga. 474, 477-478, n. 3 (350 SE2d 457) (1986). "That body acts in a quasi-judicial capacity to determine the facts and apply the law. [Cits.] A disappointed landowner travels to superior court by direct appeal, if the zoning ordinance so provides, or otherwise by mandamus. *City of Atlanta v. Wansley Moving &c. Co.*, 245 Ga. 794 (267 SE2d 234) (1980)." Id. In the instant case, Coweta County's zoning ordinance does not specifically provide for *direct* appeals in zoning cases. Furthermore, the defendants have not argued that Beugnot should have directly appealed the denial of his permit pursuant to any ordinance provisions. Accordingly, Beugnot properly petitioned for a writ of mandamus. See id.

On appeal from a zoning decision, "[t]he superior court is bound by the facts presented to the local governing body. The law, of course, is determined anew by the superior court. In a mandamus action, the

landowner is entitled to relief only where he has established before the local governing body a clear legal right to the relief sought, or demonstrates to the superior court a gross abuse of discretion. [Cit.]" *Webb*, supra at 477-478, n. 3.

On appeal to this Court from the decision of the superior court, "our duty is not to review whether the record supports the superior court's decision but whether the record supports the initial decision of the local governing body. . . ." *Emory Univ. v. Levitas*, 260 Ga. 894, 898 (1) (401 SE2d 691) (1991).

In light of this standard, the record here reveals that Beugnot purchased 66 acres of property in Coweta County in 1963 for the purposes of developing a mobile home park. Beugnot began adding mobile homes to the land in 1969 and had 13 mobile homes on the property when Coweta County enacted its first zoning ordinance which prohibited mobile home parks in the area. The Board of Zoning Appeals (the "BZA") recognized Beugnot's property as a nonconforming use. Section 31 of the Coweta County Zoning Ordinance defines "Nonconforming use or structure" as "[a]ny building, structure, or *use of land* lawful at the time of passage or amendment of this ordinance which does not conform, after the passage or amendment of this ordinance, with the regulations of the district in which it is located." (Emphasis supplied.) Additionally, § 50 of the zoning ordinance sets forth that "[t]he lawful *use* of any building or *lot* existing at the time of the enactment or amendment of this ordinance may be continued although such use does not conform to the provisions of this ordinance." (Emphasis supplied.) The term "use" is defined in the ordinance as "[t]he purpose or purposes for which land . . . is designed, arranged or intended, or to (for) which said land . . . is occupied, maintained or leased."

Although maintenance of the existing mobile homes on the property was considered by the county to be a nonconforming use, after passing its zoning ordinance the county prohibited Beugnot from adding any additional mobile homes on the property. Beugnot appealed this decision to the superior court, asserting his right to continue development of the mobile home park on the entire 66 acres as a nonconforming use (*"Beugnot I"*). The county, relying on language in the ordinance providing that "[n]o non-conforming use shall be enlarged or extended in any way[,]" argued that "[s]ince only portions of the 66 acre tract were dedicated to mobile home use at the time the ordinance was adopted, the [BZA had] no authority to permit an expansion of the non-conforming use." Accordingly, the issue before the superior court was whether the nonconforming use was (1) only the 13 mobile home sites or (2) the proposed use of the entire 66 acres as a mobile home park.

The superior court conducted a jury trial, and on September 2,

1970, the jury rendered its verdict, finding that "the entire sixty-six (66) acre tract was being used for a non-conforming use on December 3, 1969 and that Mr. Beugnot [should be] permitted to continue the development of the sixty-six (66) acres." The county did not appeal the judgment and, as late as October 1984, agreed that the 1970 verdict "grandfather[ed] the furthered development of the park . . . and [r]egulations governing mobile homes would not apply as long as development has not been abandoned for a period of two (2) years. . . ."

From 1970 to 1980, Beugnot continued to add at least one mobile home to the park every two years in compliance with the then-existing zoning ordinance. In 1980, he began adding or making major annual improvements to the property, including installing new water lines and building lakes.

In 1979 or 1980, Beugnot received a letter from Coweta County's chief building official stating that Beugnot had abandoned the non-conforming use status of his property. Pursuant to § 54 of the zoning ordinance, abandonment occurs "[w]henever a nonconforming use has been discontinued for a period of one year [and] such use shall not thereafter be reestablished, and any future use shall be in conformity with the provisions of this ordinance." Beugnot appealed to the BZA, which affirmed the county official's claim that Beugnot abandoned the nonconforming use. Beugnot threatened to sue Coweta County over the BZA decision, but did not do so because the county eventually allowed him to continue developing the property as a mobile home park. As evidence of the county's decision to allow continued development, it provided Beugnot with over 30 permits for development of the property as a mobile home park between 1980 and March 1995. A letter to Beugnot in October 1984 signed by a county building official and the chairman of the county's Board of Commissioners confirmed Beugnot's right to "continued development of [the] nonconforming Mobile Home Park." In August 1989, a county planner stated in a letter referencing Beugnot's "66 Acre Mobile Home Park" that continued development of the park would be allowed under the county's zoning ordinance. The planner noted that the number of mobile homes to be allowed on the property would be "predicated upon what would be approved by the County Health Department."

Coweta County issued its last permit to Beugnot in March 1995 for installation of electrical lines to a mobile home. On or about August 15, 1995, the Coweta County Building Department denied Beugnot's application for a building permit to install an additional mobile home pad on the property. In denying the application, the Building Department referred to § 57 of its zoning ordinance which provides that "no nonconforming use shall be enlarged or extended

in any way." The BZA affirmed the denial of the application, and Beugnot appealed to the Board. At the Board hearing, the county argued that Beugnot abandoned his nonconforming use. After the Board affirmed the BZA's decision, Beugnot filed his petition for a writ of mandamus with the superior court, claiming, inter alia, that the zoning ordinance was unconstitutional, that he had a vested right in developing the property that was violated, and that the county was collaterally estopped from denying his permit, given the res judicata effect of the jury's verdict in *Beugnot I*. Beugnot raised these issues in his motion for partial summary judgment, while also seeking summary judgment on his claims that the defendants tortiously interfered with his business relations and should be held in civil contempt.

The defendants in turn moved for summary judgment, asserting that Beugnot abandoned his nonconforming use as to the undeveloped portion of his property on June 4, 1994, the day after the last permit for a new mobile home site was allegedly granted to Beugnot.

The superior court, in granting summary judgment to the defendants, agreed that Beugnot had abandoned his nonconforming use of the remainder of his 66 acres by failing to seek any permits for new mobile homes between May 1994 and October 1995. The superior court concluded that there was no evidence that Beugnot had expended any time, money or effort between May 1994 and October 1995 for the expansion of the mobile home park.

1. We conclude that the superior court erred in granting summary judgment to the defendants and denying Beugnot's motion for partial summary judgment as he had a vested right in the continued development of the entire 66-acre tract for a mobile home park which he had not abandoned.

(a) "To be vested, in its accurate legal sense, a right must be complete and consummated, and one of which the person to whom it belongs cannot be divested without his consent. . . . [T]he term 'vested rights,' which cannot be interfered with by retrospective laws, means interests which it is proper for the state to recognize and protect and of which the individual cannot be deprived arbitrarily without justice." (Citation and punctuation omitted.) *Goldrush II v. City of Marietta*, 267 Ga. 683, 694 (7) (482 SE2d 347) (1997). Moreover, " '[a] landowner will be held to have acquired a vested right to . . . initiate and continue a use despite a restriction contained in an ordinance where, prior to the effective date of the ordinance, in reliance upon a permit theretofore validly issued, he has, in good faith, made a substantial change of position in relation to the land, made substantial expenditures, or has incurred substantial obligations.' [Cit.]" Id. at 698 (10).

The Supreme Court of Georgia has repeatedly recognized the

vested right of property owners seeking to develop a mobile home park on their land to continue the development despite a county's adoption of zoning ordinances preventing such use. See *Craig v. City of Lilburn*, 226 Ga. 679 (177 SE2d 75) (1970); *Springtime, Inc. v. Douglas County*, 228 Ga. 753 (187 SE2d 874) (1972); *Spalding County v. East Enterprises*, 232 Ga. 887 (209 SE2d 215) (1974). See generally *City of Douglasville v. The Willows, Inc.*, 236 Ga. 488 (224 SE2d 363) (1976).

In *Craig*, property owners had obtained six permits from the county for placement of septic tanks, and installation of the tanks was in progress when the city of Lilburn enacted zoning regulations prohibiting the development of the park. The owners had also obligated themselves for $3,200 worth of work on the property prior to the enactment of the zoning regulations. The Supreme Court concluded that the owners had "acquired a vested property right in the proposed use of their land, toward which they had made substantial expenditures of time, effort and money. [Cits.]" *Craig*, supra at 680.

Additionally, in *Springtime*, supra, the Supreme Court held that Douglas County was not entitled to an injunction preventing the property owner from enlarging his mobile home park. The park was in existence prior to the rezoning of the property that prohibited the operation of the park. After the zoning change, the owner sought and obtained a building permit from a county official to enlarge the mobile home park. The owner borrowed over $100,000 and had substantially completed the development when Douglas County obtained a temporary injunction preventing further development and construction of mobile home sites on the owner's property. The Court concluded that Douglas County was "not entitled to an injunction when, with full knowledge of [its] rights, [it had] been guilty of delay and laches in asserting them, and [had] negligently suffered large expenditures to be made by another party on whom great injury would be inflicted by the grant of the injunction. [Cits.]" *Springtime*, supra at 757-758.

This Court has ruled that a nonconforming use can be the proposed use of property for development and maintenance of a mobile home park and that a property owner can obtain vested rights in such a use. *Rainwater v. Coweta County Bd. of Zoning Appeals*, 123 Ga. App. 467 (181 SE2d 540) (1971). The facts of *Rainwater* show that James Rainwater purchased a tract of land in 1961 for development of a mobile home park. Prior to Coweta County's adoption of its ordinance that prevented the existence of mobile home parks in the area, Rainwater had cleared portions of the land, installed a culvert and a road on the property, and entered a contract for the construction of a well. Rainwater appealed from the superior court's order affirming Coweta County's denial of a permit for a septic tank.

Coweta County's zoning ordinance definitions of "use" and "nonconforming use" in 1971 were substantially the same as the county's current definitions of those terms. We found that the question in Rainwater's appeal was "whether [his] actions were sufficient to constitute a nonconforming use within the meaning of the statute so that such use could be continued even though it would not conform to the provisions of the zoning ordinance." Id. at 468. Relying on the Supreme Court's decision in *Craig*, we concluded that "in our construction of the zoning ordinance, a substantial expenditure of time, effort and money by [Rainwater] in the proposed use of the property would be sufficient to constitute a nonconforming use." Id. at 469. Accordingly, we said, "the question as to whether there was a nonconforming use was for the jury[,]" so the superior court erred in directing a verdict for Coweta County. Id.

As in *Rainwater*, there was evidence in the instant case that Beugnot had expended substantial time, effort and money on the development of the property as a mobile home park prior to the county's enactment of the zoning ordinance. Moreover, the county's zoning ordinance does not prohibit categorizing the proposed use of the entire 66 acres for a mobile home park as a nonconforming use. The ordinance establishes that "nonconforming use" includes the "use of land lawful at the time of passage or amendment of [the] ordinance." See Coweta County Zoning Ordinance § 31. And "use" includes "[t]he purposes . . . for which land . . . [is] intended, or [for] which said land . . . is occupied, maintained, or leased." Id. Accordingly, the question of whether the proposed use of the 66 acres was sufficient to constitute a nonconforming use was properly left for the jury. And the jury's verdict in *Beugnot I* specifically concluded that the entire 66 acres was being used as a nonconforming use, the mobile home park.

The county did not contest the *Beugnot I* decision, but rather admitted that the verdict grandfathered the development of the 66 acres as a mobile home park. In accordance with this admission, the county issued permit after permit from 1970 until 1995 without ever raising the concern that he was impermissibly extending or enlarging his nonconforming use by adding mobile home sites. The 1980 controversy between the county and Beugnot involved the county's claim that Beugnot had abandoned his use, not that he was extending or enlarging his use. Letters from county officials to Beugnot and other interested parties sent during the 1980s confirmed that Beugnot could continue to develop his nonconforming use, the 66-acre mobile home park. In denying the August 1995 permit for a site, the county first cited to the ordinance provision prohibiting enlargement of a nonconforming use. However, the county subsequently changed its argument, arguing before the Board, then the

superior court, and now this Court that Beugnot abandoned his non-conforming use. Accordingly, it is clear that the nonconforming use was determined by the jury in 1970 and considered by the county to be the use and proposed use of the 66 acres as a mobile home park.

Beugnot also construed the verdict to mean that he could develop the entire parcel. Moreover, Beugnot relied to his detriment on the county's assertions that he could continue to develop the 66 acres as a mobile home park and the county's actions of issuing permits for the development. From the time he purchased the property until 1979, Beugnot expended approximately $56,400 in developing the park. He cleared and grubbed land, graded roads, and installed septic systems, wells, lakes and ponds. Between 1970 and 1994 he installed at least 23 mobile home pads on the 66 acres. With full knowledge of Beugnot's intentions and the ordinance provisions, the county allowed Beugnot to continue development of the entire parcel for 25 years. If the county desired to limit Beugnot's continued development of the property, it should have taken appropriate action prior to Beugnot's development and not approved the development. Accordingly, we find that Beugnot had a vested right in the nonconforming use. *Craig*, supra; *Goldrush*, supra.

(b) Additionally, we find that there was no evidence that Beugnot intentionally abandoned the nonconforming use. Abandonment is commonly " ' "construed to mean the intentional relinquishment of a known right to devote the property to a permitted non-conforming use, evidenced by an overt act or failure to act, sufficient to support the implication of such an intent." ' [Cit.]" *Ansley House, Inc. v. City of Atlanta*, 260 Ga. 540, 542 (397 SE2d 419) (1990). Although § 54 of the Coweta County zoning ordinance establishes a specific time frame for abandonment of a nonconforming use (one year), "the expiration of [such a] time period . . . has been construed by a majority of courts to merely raise a rebuttable presumption that there has been an intent to abandon the nonconforming use. Some proof of an overt act or failure to act is still required before there will be a finding of an intent to abandon the nonconforming use. [Cits.]" Id.

There is no evidence in this case of an overt act or failure to act on Beugnot's part to prove his intent to abandon the use of the property. At the Board hearing, Beugnot presented evidence that people were currently living on the 66-acre tract, that he had continually improved the entire property, that he had not yet developed all 66 acres because of limited finances and that he had periodically contacted the county to ensure that the 66-acre tract was in compliance with the nonconforming use provisions of the zoning ordinance. Beugnot obtained permits for the development of the property from 1970 through 1995. Accordingly, Beugnot has not failed to act, nor was there any overt act on his part evidencing his intent to abandon the

nonconforming use. *Ansley House,* supra.

Coweta County's argument that Beugnot can prove his intent not to abandon the nonconforming use of the 66-acre tract only by obtaining a county permit for a "new" mobile home site is unpersuasive. The county's theory is in direct conflict with the definition of "use" set forth in the zoning ordinance. As long as Beugnot takes some action to develop or maintain his property within a one-year period, he has not abandoned the nonconforming use as established in § 54 of the ordinance. Beugnot's use of the property can include *maintaining* it for a certain purpose according to the definition of "use" in the zoning ordinance. Beugnot's March 1995 permit for installation of electrical service to an existing mobile home site was evidence that Beugnot was maintaining the 66-acre tract for the purpose of a mobile home park.

Moreover, nothing in the zoning ordinance requires that Beugnot continue developing the undeveloped portions of his property, as opposed to the developed portions, within a one-year period in order for him to comply with Article 5 governing nonconforming uses. We will not infer such a requirement into the zoning ordinance because "statutes or ordinances which restrict an owner's right to freely use his property for any lawful purpose are in derogation of the common law[; therefore,] they must be strictly construed and never extended beyond their plain and explicit terms." (Citations and punctuation omitted.) *Bo Fancy Productions v. Rabun County Bd. of Commissioners,* 267 Ga. 341, 343 (1) (a) (478 SE2d 373) (1996).

The evidence before the Board clearly showed that Beugnot has, at the very least, *maintained* the lawful nonconforming use of the property as required by the zoning ordinance. Beugnot was thus entitled to the continued enjoyment of the nonconforming use, and the Board erred in denying him relief. Accordingly, the superior court erred in granting summary judgment to Coweta County and denying Beugnot's motion for partial summary judgment as Beugnot had a vested right in the nonconforming use, which he had not abandoned.

(c) We have noted supra that mandamus will issue under two circumstances: (1) when a petitioner has a clear legal right to the relief sought or (2) where there has been a gross abuse of discretion. *Webb,* supra. See *Wansley Moving &c. Co.,* supra at 796, citing *Pruitt v. Meeks,* 226 Ga. 661 (177 SE2d 41) (1970). The first circumstance has been met in this case, as Beugnot has a clear legal right to relief given his vested right in the nonconforming use which he has not abandoned. *Wansley Moving &c. Co.,* supra. The writ of mandamus should have been granted.

2. Our conclusion that the trial court erred in denying Beugnot partial summary judgment does not extend to Beugnot's claims that the defendants allegedly interfered with his business relations and

that they should be held in civil contempt. Beugnot has not asserted on appeal that the trial court erred in denying his motion for partial summary judgment on these claims, or that the trial court erred in granting the defendants summary judgment on the claims. Accordingly, he has waived any right to appeal on these issues. See *Robison v. Green*, 228 Ga. App. 27, 28 (2) (491 SE2d 95) (1997).

*Judgment reversed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED MARCH 16, 1998 —
RECONSIDERATION DENIED MARCH 31, 1998 ▮▮▮▮▮▮▮▮▮

*Wilson, Brock & Irby, Richard W. Wilson, Jr., James S. Teague, Jr., Gerald S. Walters*, for appellant.

*Glover & Davis, Asa M. Powell, Jr., Jerry A. Conner*, for appellees.