**THIRD DIVISION
MCFADDEN, C. J.,
DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 1, 2021**

# In the Court of Appeals of Georgia

A20A2016, A20A2017. CARSON et al. v. BROWN et al.; and vice versa.    McF-072, McF-073

A21A0139. CARSON et al. v. BROWN et al.    McF-014

MCFADDEN, Chief Judge.

These related cases stem from the efforts of a landowner, Red Bull Holdings II, LLC, and its principal, E. Howard Carson, Jr. (collectively, "Carson"), to develop real property at a particular density. Carson bought the Forsyth County property in March 2016, after a meeting at which the Forsyth County planning director, Tom Brown, confirmed that the property was zoned for development of 9000-square-foot residential lots. But in August 2016, the Forsyth County Board of Commissioners imposed a moratorium[1] on the acceptance of applications for land disturbance permits

---

[1] The parties dispute whether there was a single moratorium or a series of moratoria. We do not reach that issue and so use "moratorium" only for convenience.

for lots of that size. In September 2016, Carson unsuccessfully sought a land disturbance permit to develop the property with 9000-square-foot lots. The next month, the Board of Commissioners amended the County's United Development Code (the "zoning code") to prohibit development of lots of that size.

Case No. A21A0139 concerns Carson's petition for an administrative determination by the County's planning department that he had vested rights to develop the property with 9000-square-foot lots. In that case, Carson argued that he had obtained vested rights by purchasing the property and making expenditures in reliance upon the probability that a building permit would issue, based upon the property's then-current zoning status and the assurances of zoning officials. Carson's claim of vested rights was denied, the County's zoning board of appeals (ZBA) affirmed that denial, and on a writ of certiorari the Superior Court of Forsyth County also affirmed. We reverse, because the evidence presented to the ZBA showed that Carson acquired vested rights in this manner.

Cases No. A20A2016 and A20A2017 concern a separate action in which Carson sought mandamus and injunctive relief based on his claim that he obtained vested rights to develop the property with 9000-square-foot lots in September 2016, when he applied for a land disturbance permit. Because we find in Case No.

2

A21A0139 that Carson already had acquired vested rights by that point, Cases No. A20A2016 and A20A2017 are moot, thereby depriving us of appellate jurisdiction over them. So we dismiss the appeal and cross-appeal in Cases No. A20A2016 and A20A2017.

1. *The administrative vested rights determination (Case No. A21A0139).*

Carson appeals the superior court's ruling affirming, on certiorari, the decision of the ZBA affirming an administrative determination that he did not have vested rights to develop the property with 9000-square-foot lots. The superior court's review in this case was

> limited to alleged errors of law, as set forth in the petition [for writ of certiorari], and the determination of whether the decision was supported by any evidence. On appeal, this [c]ourt's duty is not to review whether the record supports the superior court's decision; instead, we must determine whether the record supports the determination of the [ZBA].

*Longo v. City of Dunwoody*, 351 Ga. App. 735, 739 (832 SE2d 884) (2019) (citations omitted). In doing so, we apply the any-evidence standard of review. *Emory Univ. v. Levitas*, 260 Ga. 894, 896-897 (1) (401 SE2d 691) (1991); *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 865 (1) (493 SE2d 51) (1997). "If, under the appropriate standard of review, the evidence does not support the [ZBA's] decision, that decision

3

would constitute an abuse of discretion and be subject to reversal." *Emory Univ.*, supra at 896 (1) n. 1. In other words, the evidence, viewed in the light most favorable to the ZBA's decision, nevertheless may establish as a matter of law that Carson acquired vested rights. See generally *Beugnot v. Coweta County*, 231 Ga. App. 715, 718-721 (1) (a) (500 SE2d 28) (1998) (reversing superior court's summary judgment rulings on ground that evidence established mobile home park owner had vested rights, as a matter of law, to develop the park in a particular manner).

(a) *Facts and procedural history.*

In October 2016, Carson filed with the County's planning department an application for a determination of his vested rights in the property, specifically regarding his entitlement to develop the property with 9000-square-foot lots. In a January 6, 2017 letter, the county attorney issued a decision that Carson did not have such vested rights. Tom Brown, the director of the County's planning department, concurred in that decision. Carson appealed the decision to the ZBA, which held a public hearing on the issue on March 30, 2017.

At the hearing, the ZBA decided the administrative appeal in an oral ruling, but it did not make any express written findings of fact or conclusions of law. Consequently, we may consider the entire evidentiary record on appeal. Cf. *Hughes*

4

*v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (scope of appellate review is limited when trial court has made express findings of disputed facts). Moreover, the ZBA heard no live testimony, but made its decision based on affidavit testimony and supporting documents. And most of that affidavit testimony is undisputed. Viewed in the light most favorable to the ZBA's decision, see *DeKalb County v. Bull*, 295 Ga. App. 551, 552 (1) (672 SE2d 500) (2009), the affidavits and supporting documents establish the following facts.

On March 14, 2016, before buying the property, Carson met with planning director Tom Brown. At that meeting, the two men discussed Carson's plan to develop the property as a 42-lot residential subdivision with 9000-square-foot minimum lot sizes. They also reviewed a document depicting the proposed subdivision layout. Carson asked Brown if he would confirm that the zoning code allowed 9000-square-foot lots on the property, and Brown responded by confirming that the zoning code, as it was then written, would allow that lot size. Brown, however, "made no representations as to future [zoning code] changes that might impact the indicated property nor did [he] guarantee that Carson would be able to build out this subdivision at 9,000 square foot lots."

After his meeting with Brown, Carson bought the property at a price based on his plan to develop 9000-square-foot lots. In April and May 2016, he took steps to obtain the necessary sewer easements for the property, Carson discussed his plan to develop the property and his use of a specific process to obtain the easements with the director of the County's water and sewer department and obtained approval from the director of preliminary sewer plans for the development, so that (in the director's words) Carson could "mov[e] forward in negotiating the easements or requesting use of the Developer assisted [utility easement] condemnation policy." Carson then obtained appraisals of the sewer easements and made offers to adjoining landowners to purchase them. Carson informed those adjoining landowners, in communications copied to the water and sewer director, that he intended to develop 42 lots. He also discussed the sewer easements with the water and sewer department's right-of-way coordinator. On May 27, 2016, that person informed Carson that the director had "approved the project" and outlined the next steps Carson needed to take to obtain the easements, and on June 6, 2016, she informed Carson that they could "move towards condemnation" of the easements if the adjoining landowners did not agree to Carson's offer to purchase them.

Carson averred that, based upon his interactions and communications with Brown and with persons in the County's water and sewer department, he "spent in excess of $83,000.00 obtaining the requisite plans, studies, appraisals, and the like, pursuing development of the [p]roperty with a residential subdivision consisting of up to 42 lots[.]"

After the ZBA affirmed the planning department's decision denying Carson's claim of vested rights, Carson petitioned the Superior Court of Forsyth County for a writ of certiorari, naming the County and its planning director, Tom Brown (collectively, "the County"), as defendants-in-certiorari. Carson's certiorari petition sought a holding that Carson had the right to a determination that he had vested rights to develop the property with 9000-square-foot lots. The superior court affirmed the ZBA decision, and we granted Carson's application for discretionary appellate review.

On appeal, Carson argues that the evidence showed he had acquired vested rights to develop the property consistent with the zoning regulations in place when he bought it and undertook to obtain sewer easements for the property. We agree that the evidence did not support the ZBA's decision, so we reverse on that ground and do not reach Carson's other arguments for reversal.

7

(b) *The evidence showed that Carson acquired vested rights.*

The evidence presented to the ZBA, viewed most favorably to the County, showed that Carson acquired vested rights to develop the property under the zoning regulations permitting 9000-square-foot lots. See *Spalding County v. East Enterprises.*, 232 Ga. 887, 889 (209 SE2d 215) (1974) (landowner with vested rights may use property in manner consistent with zoning code in existence at time rights vested, even if another zoning code subsequently is adopted prohibiting such use).

A landowner acquires vested rights, among other ways, by making "a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based upon an existing zoning ordinance and the assurances of zoning officials[.]" *Barker v. Forsyth County*, 248 Ga. 73, 76 (2) (281 SE2d 549) (1981). Accord *WMM Properties. v. Cobb County*, 255 Ga. 436, 439 (1) (d) (339 SE2d 252) (1986). This rule for the acquisition of vested rights "is derived from the principle of equitable estoppel[.]" *Cohn Communities v. Clayton County*, 257 Ga. 357, 358 (1) (359 SE2d 887) (1987). Under the principle of equitable estoppel, the zoning official's assurance may be in the form of an act or omission. See *North Ga. Mountain Crisis Network v. City of Blue Ridge*, 248 Ga. App. 450, 452 (2) (546 SE2d 850) (2001).

8

In this case, the evidence showed that Carson and Brown discussed Carson's planned development of the property with 9000-square-foot lots. At that meeting, in response to Carson's inquiry, Brown confirmed that the current zoning code permitted development at that density. Based on the two men's discussion at the meeting, Carson proceeded to buy the property and make expenditures pursuing the property's development. This evidence shows that Carson

> ma[de] a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based upon an existing ordinance and the assurances of zoning officials, [thereby] acquir[ing] vested rights . . . entitl[ing him] to have the permit issued despite a change in the zoning ordinance which would otherwise preclude the issuance of a permit.

*Cohn Communities*, 257 Ga. at 358 (1). See *Barker*, 248 Ga. at 73, 76 (2) (purported assurances that a "project would be permissible under existing agricultural zoning as a commercial recreation use if certain modifications were made" could give rise to vested rights, but the landowner was not entitled to summary judgment because there was a factual dispute as to whether such assurances had actually been given).

We are not persuaded by the County's arguments to the contrary. The County argues that Brown's meeting with Carson regarding the proposed development did

9

not constitute an assurance that could give rise to vested rights because the evidence showed that Brown, in the words of his affidavit, "made no representations as to future [zoning code] changes that might impact the indicated property nor did [he] guarantee that Carson would be able to build out this subdivision at 9,000 square foot lots." But there is no requirement that the zoning official's assurances cover possible future changes. Georgia law does not require the assurance to make any specific representation or contain any magic words. As stated above, the assurance may take the form of an act *or omission*. See *North Ga. Mountain Crisis Network*, 248 Ga. App. at 452 (2). See also *Barker*, 248 Ga. at 78 (Hill, J., dissenting) (noting that the assurances at issue in a case in which the majority found the landowner might have acquired vested rights were *not* assurances "that the existing ordinance would not be changed").

And we do not agree with the County's assertion that Brown's confirmation of the property's zoning status was insufficient to create vested rights. The County cites for this proposition our Supreme Court's decision in *Cohn Communities v. Clayton County*, supra, 257 Ga. 357, which the County argues "is on all fours and controls." We disagree with the County's reading of *Cohn Communities*. In that case, our Supreme Court held that a "neutral statement of the present zoning in effect" did not

10

create a vested right. Id. at 359 (1). That statement was a "letter from the county planner stating that the multi-family parcel at issue in th[e] appeal 'is presently zoned R-3 Multi-Family Residence District according to the current Clayton County Zoning Resolution text and map.'" Id. at 357. There was no evidence in *Cohn Communities* that the county planner who made that statement had "notice . . . that the landowner [was] about to expend substantial sums in reliance on information received." Id. at 359 (1). By contrast, Brown's confirmation to Carson that the then-existing zoning code would allow development of 9000-square-foot lots occurred within the context of a face-to-face discussion between the two men about Carson's intention to purchase and develop the property. In addition, the landowner in *Cohn Communities* only spent $600 in reliance upon the county planner's letter. Id. Here, by contrast, after meeting with Brown Carson spent more than $83,000 to prepare the property for development. Given these significant distinctions, *Cohn Communities* does not require a conclusion that Carson did not acquire vested rights.

The County also challenges the evidence that Carson made expenditures in good faith reliance on his conversation with Brown, arguing that Carson's affidavit testimony on that point was insufficiently detailed. The County suggests that some of Carson's expenditures could have occurred before Carson met with Brown or after

11

Carson learned that the County had imposed a moratorium affecting his ability to obtain a land disturbance permit. But the County did not dispute this testimony before the ZBA; it merely argued that "the information [about expenditures was] a little thin" before returning to its argument that Carson had not shown he received the necessary assurances to give rise to vested rights. Simply put, there was no evidence before the ZBA that Carson's expenditures were other than what he claimed them to be. Given that no live testimony was presented to the ZBA and the ZBA made no express written findings of fact or conclusions of law, we will not assume that the ZBA chose not to credit Carson's undisputed testimony on the issue of expenditures. See generally *Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC*, 305 Ga. App. 283, 284 (I) n. 1 (699 SE2d 456) (2010) (noting importance of live testimony to trial court's ability to make credibility assessments of witnesses) (physical precedent only).

(b) *Other arguments for reversal*.

Alternatively, Carson argues that we should reverse the superior court's ruling because he acquired vested rights by initiating a county procedure for obtaining sewer easements, and because the zoning ordinance governing the administrative process for determining vested rights did not contain sufficiently ascertainable standards for

12

that determination. Given our above conclusion that Carson acquired vested rights by another means, we do not address the merits of these alternative arguments.

2. *The action for mandamus and injunctive relief (Cases No. A20A2016 and A20A2017).*

Cases No. A20A2016 and A20A2017 are an appeal and cross-appeal from the superior court's summary judgment ruling in Carson's action for mandamus and injunctive relief, which he brought against Brown and another person in the County's planning department. In that action, which previously has been before this court in a different procedural posture, see *Carson v. Brown*, 348 Ga. App. 689 (824 SE2d 605) (2019), Carson asked that the superior court compel the defendants to declare the moratorium on land-disturbance-permit applications to be void and to process Carson's September 2016 permit application and approve it under the version of the zoning code permitting 9000-square-foot lots, without regard to the moratorium. In a ruling on cross-motions for summary judgment, the superior court denied most of Carson's requested relief, including Carson's request that his permit application be processed without regard to the moratorium. The trial court did rule that Carson was entitled to have his permit application *accepted* and processed — but subject to the moratorium.

13

On appeal, Carson argues that the trial court erred in ruling that the moratorium was valid, in ruling that the defendants had not accepted his permit application in September 2016 when he turned it in, and in refusing to require the defendants to process the permit application without regard to the moratorium. On cross-appeal, the defendants argue that the trial court erred in requiring them to accept Carson's permit application, in concluding that Carson's action was not barred by his failure to exhaust administrative remedies, and in ruling that an earlier iteration of the moratorium was invalid.

We cannot consider the merits of these cross-appeals if our resolution of A21A0139 renders them moot. See *Barrow v. Raffensperger*, 308 Ga. 660, 666 (2) (b) (842 SE2d 884) (2020). And we find that it does.

A case is moot, among other reasons, "when it seeks to determine an issue which, if resolved, cannot have any practical effect on the underlying controversy[. W]hen an alternative remedy exists that is as complete and convenient as mandamus, the extraordinary remedy of mandamus will not lie. The same is true as to injunctive relief." *Barrow*, 308 Ga. at 667 (2) (b) (citations and punctuation omitted).

The controversy underlying Carson's action for mandamus and injunctive relief is whether Carson may develop the property with 9000-square-foot lots. In that

14

action, he asserts that he is entitled to do so because he acquired vested rights when he sought a land disturbance permit in September 2016. See *WMM Properties*, 255 Ga. at 438 (1) (b) ("A landowner has a right . . . to be issued a building permit in accordance with zoning regulations as such regulations exist at the time a proper application for building permit is submitted to the proper authority."). The specific issues presented in the appeal and cross-appeal, concerning the validity and effect of the moratorium and the circumstances surrounding Carson's filing of and the county's response to the September 2016 permit application, pertain to Carson's assertion that he acquired vested rights by virtue of that application.

But as explained above in our resolution of Case No. A21A0139, by September 2016 Carson already had obtained vested rights to develop the property with 9000-square-foot lots. Consequently, even though the zoning code subsequently changed, Carson is "entitled to receive the necessary building permits to [develop the property in accordance with his vested rights] if [he] complie[s] with all requirements for the building permits." *Cannon v. Clayton County*, 255 Ga. 63, 64 (335 SE2d 294) (1985). Whether or not we affirm the superior court's ruling in the action for mandamus and injunctive relief has no effect on those vested rights or on Carson's ability to seek a land development permit based on those rights. Given our ruling in Case No.

15

A21A0139, Carson now has an alternative remedy "as complete and convenient as mandamus [or] injunctive relief." *Barrow*, 308 Ga. at 667 (2) (b) (citations and punctuation omitted). He may simply file a new application for a land disturbance permit. For this reason, Carson's action for mandamus and injunctive relief is moot, meaning that Cases No. A20A2016 and A20A2017 "must be dismissed, not adjudicated." *Barrow*, supra at 666 (2) (b).

*Appeals dismissed in Cases No. A20A2016 and A20A2017. Judgment reversed in Case No. A21A0139. Doyle, P. J., and Hodges, J., concur.*